of America. Oral argument not to exceed 15 minutes per side. Michael Hawley for the appellate. May it please the court, I'm Michael Hawley and I represent Joe Webb in this appeal. I'd like to reserve three minutes for a vote, please. Thank you. Now, in Mr. Webb's sentencing, everyone around him made a serious mistake that threatens to cost him several extra years in prison. At the time of the sentencing, the Department of Justice was still taking the position that the Fair Sentencing Act does not apply to people in Mr. Webb's shoes. The district court, without comment, apparently accepted that position. Defense counsel, possibly ignorant that the Fair Sentencing Act even applied, was certainly ignorant that he could and should be challenging that position. Now, that position was wrong. The Supreme Court made that clear in its holding in Dorsey later on. Now, if you fast forward 15 months from the time of Mr. Webb's sentencing, he filed a 2255 motion to correct this definite error to try and get the sentencing hearing that he should have had. Now, I think there's also no dispute that if he had filed that 2255 motion 11 months and 29 days after sentencing, he would have gotten back in court and he'd have his new sentencing hearing. But he did it three months later. And so, the issue is, can those three months be told under the statute or equitably? Now, I think the answer is clearly yes, at least to a limited degree, with respect to his claim under Flores-Ortega, which would give him the right to file a delayed appeal. And that's so for three reasons. Because these three facts are true. First, at the time of his sentencing, his conviction, Mr. Webb did have non-frivolous appealable issues. Second, at that time, his defense lawyer failed to tell him about those non-frivolous appealable issues, even though he was required to do so by constitutional standards. And third, it would reasonably take three or more months for a duly diligent person in Mr. Webb's circumstances to find out, to discover, that in fact, well, he did have non-frivolous appealable issues, even though his lawyer didn't tell him about it, even though his lawyer should have been telling him about it. Now, the way I've presented this in the brief, we first address... Has Mr. Webb already served this time that we were worrying about here? Has he served, if he were successful, is there relief to be had? Oh, yes, Your Honor. Because I see the filings have been, it's been some years. Sure, it's still four years after he filed his... What does it save him if this, what amount of time does it save him if this appeal succeeds? Yes, Your Honor. He has served less than ten years. If he got back to a proper sentencing hearing, the judge would understand that she would have the authority to go down to ten years. He has served less than ten years, so in theory, he could get a sentence down to ten years. How much less? I just, I wonder if we're talking about something here that's six months. Oh, no, Your Honor. I mean, he has served... Not that six months in prison. Yeah, sure. I think he is, I think he was out on pretrial release before. You just don't know. At some point, but he was sentenced and he pled guilty in 2010. I don't want to take this much of your time. Sure, sure. Okay. Go ahead. He may have been in for six or seven years. But, so anyway, really, I think the first step in understanding the situation is to recognize that his defense lawyer did violate Flores Ortega, his obligation. Because even if we assume Mr. Webb did not articulate, say, like, I want to appeal, he obviously showed disbelief that his sentence was so long. He was saying he was hoping for less, and he asked his lawyer to come talk to him. All right. He did not expressly ask to appeal. Nonetheless, a lawyer must go talk to his client and consult about the pros and cons of appealing if the client makes such noises, or, either one of these, or there are non-frivolous appealable issues. And there were those issues. He could have directly appealed the issue of saying, look, Mr. DeWolf, defense counsel here, was ineffective. Like anyone else handling a crack cocaine case at that time, he should have been aware that the Fair Sentencing Act was arguably applied. District courts in this circuit were holding that. One had held it before Mr. Webb's sentencing. A couple others held it afterwards. And there was a snowballing amount of district courts throughout the country that were doing it. This is something that any decent criminal defense lawyer in the federal court should have known. And he should have told Mr. Webb that, you know, despite your appeal waiver, you could file this on appeal. Or you could argue that your plea was involuntary because, you know, you were misadvised about what the statutory range really was. Those are both viable appeals. Or, you know, he could even appeal the direct Fair Sentencing Act issue and say it should apply and, you know, hope the government doesn't invoke its waiver. The government doesn't have to invoke its appeal waiver. So he could have done all those things. And I believe if defense counsel had known about the Fair Sentencing Act, it would have been very natural for him to say, sure, you could appeal those issues. Now, as for the tolling part, you know, what the case law says under Flores-Ortega is, you know, if there's an express request, counsel has to file. These other circumstances we talked about, counsel has to consult. Now, if it's a fail to file case, you know, where there's an express request, the cases clearly say that the 2255 movement or the petitioner gets a grace period. He gets the time. It would take a duly diligent person in his circumstances to figure out that, well, in fact, my lawyer did not file the appeal I asked. This court in Desenze has extended that type of logic or that grace period to the other Flores-Ortega situation where there's a failure to consult. And in that case, it said that where this defendant was not told about his right to appeal, it said, well, this person should get the amount of time it would take a duly diligent person in that person's situation the time it would figure out they have the right to appeal. By the same logic, it should apply here to Mr. Webb. He was sent off to prison, being told basically by his lawyer that, well, there is no appeal, because his only advice from his lawyer was if you get a sentence less than I think the number was 292 months, you've waived appeal. So he's sent off with advice from his lawyer that there is no appeal. He doesn't have any reason to turn around and be second-guessing that. He's been represented by counsel that whole time. And, of course, he gets off to prison and asked for it. Well, the only benefit here, you have to hope the government doesn't invoke the appeal waiver? No, Your Honor. I believe that is one avenue of winning on appeal. But the other avenues are ineffective assistance of counsel claim raised on direct appeal. Okay. But counsel did go see him and say you have no appeal because you waived it. I thought you just said that, no? No. I'm sorry. I may have been confusing there. But defense counsel, before sentencing at some point, told him, look, there's this appeal waiver, anything within the guidelines or less you've waived. He didn't talk to him afterwards. The record is a little conflicting on this. There might have been a phone call. Defense counsel said, well, I think I went to the jail a couple days later, as he requested, and talked to him. But the jail records show that he didn't go. So I guess his thought that he went to jail was inaccurate. But there's no record of what he would have said then about appeal. According to defense counsel, the only thing he told him was, you have this waiver, the sentence is below 292 months, you can't appeal. And, of course, the sentence was 240, so his message was you can't appeal. And he certainly did not tell him you have non-frivolous appealable issues. And those issues would have been raising on direct appeal and effective assistance of counsel at sentencing, an involuntary plea. Now, if Mr. Webb didn't raise that on direct appeal, the involuntariness claim he'd be waiving it forever. That's something his lawyer should have told him about. And, as I just mentioned, and this wasn't something I relied on in my brief, they could raise the FSA issue directly and say it should have applied and just hope the government doesn't assert their waiver. That would have been a reasonable approach to take in this situation. But I have laid out in the brief why he has a valid and effective assistance at sentencing claim that he could have raised on direct appeal. In a Fifth Circuit case, I believe it was a district court out of Fifth Circuit, Rios Delgado, relief was granted in such a circumstance without any evidentiary hearing. It shows that had Mr. Webb raised that issue on direct appeal, it could have been adjudicated on direct appeal. Let me ask you one question. In terms of your brief and the relief that Mr. Webb requests, my understanding is that he seeks relief under 2255F4, among maybe other considerations, equitable tolling. But under F4, when he had to, as I understand it, he had to discover sort of new facts that would start the one-year period, one-year clock. And are there new facts? I mean, I know the law changed and maybe the circuits were, the FSA had different time periods. It may have been unclear to some in this circuit or that particular court that the FSA was applicable. But is there, what's the 2255F4 argument here? Yes, Your Honor. The new facts are he had to discover that, in fact, he did have non-flawless appealable issues. Now, in de sensi, the new fact was that he had the right to appeal. Now, he always had, in de sensi, he always had that right, and he could have found it out just by opening a statute book. But he was given the amount of time it would reasonably take a duly diligent person to discover that fact. These are newly discovered facts. These are facts that, you know, it's new to the defendant. He has discovered it through, or it's the amount of time it would take a duly diligent person to find that fact in their circuit. Do you have an argument when that occurred? Your Honor, it would be sometime after the time when he got his file, which was roughly four more months after his sentencing. That's when he got his file. In prison, he didn't have his file. He didn't have access to the exact facts of his case. And then months after that, that's when Dorsey was, or the Department of Justice reversed its position, and it was publicly clear that there was maybe a problem with this Fair Sentencing Act issue. So at that time, which was all well over three months after his sentencing, I believe that's the time when you could say the duly diligent person would have discovered the fact that he has non-frivolous appealable issues. Okay. Thank you. Thank you. Morning. Thank you, Your Honor. May it please the Court, Cecil Van Devender on behalf of the United States. The defendant offers a number of alternative theories in support of his request for delayed appeal or statutory or equitable tolling. But they all basically boil down to two propositions. The first is that under Roe v. Flores-Ortega, trial counsel had a constitutional duty to consult with his client about the merits of taking an appeal. And two, that a violation of the duty to consult should be treated for remedial purposes more or less just like a violation of the duty to file a direct appeal when you're directed to do so by your client. So I'd like to just start by addressing why each of those propositions is mistaken. On the question of whether there was a duty to consult, Flores-Ortega makes clear there's no per se duty. It applies only in certain circumstances. A number of different factors are considered. But it boils down to basically whether trial counsel had reason to believe either that a rational defendant in his client's shoes would want to appeal or that his particular client did, in fact, want to appeal. And so it's worth remembering what it is that trial counsel actually reasonably believed at the time of sentencing. So he knew that his client had been charged with a crime that certainly at the time he was committed, at the time he was charged, at the time that he pleaded, no dispute that it triggered a 20-year mandatory minimum. He knew that his client voluntarily entered into a plea agreement where he chose to waive his right to appeal any sentence below the applicable guideline range. He also had the opportunity to try and get a lower sentence of 180 months if he had cooperated. But as he knew, the government had notified him before sentencing that because he had failed to cooperate, because he had committed additional crimes while in jail, smuggling and drugs, trying to use his 4-year-old son to bring in a phone, the government would not be filing a substantial assistance motion. And it gave Webb the opportunity to seek to withdraw his plea or withdraw from the plea agreement if he wanted to. But trial counsel knew that Webb had decided, let's go forward with this plea agreement, with the sentencing where everyone is agreed that the sentencing range will be, excuse me, the statutory range will be 20 years to life. Am I right that the Fair Sentencing Act had passed before the sentencing? Correct. Okay, that's correct. So there was some knowledge somewhere that he might be eligible for, I don't know, but the lower mandatory minimum maybe was instead of 240 months was 120 months, I think. And that would have been known presumably by his attorney and, I don't know, maybe even the court as the sentencing. Or is that not right? I think, as a matter of fact, neither his attorney nor the court nor anyone else had any sense that the FSA applied to him. I assume that people knew that the FSA had passed, but I think perhaps in light of Carradine, although the record is a little bit unclear on who knew what when. But Carradine, as I recall, the sentencing occurred before the Fair Sentencing Act. It did. So that's really distinguishable, arguably. Arguably, although certainly that wasn't the way that the Carradine court handled it, in an opinion for the court per Judge Batchelder. The rationale was you focus on the date in which the defendant committed the offense conduct and what penalties applied then. And, in fact, when this court has kind of looked at Carradine later, we cited the Shaw case where the court said, our court held that the FSA's reduced statutory minimum sentences did not apply to defendants who committed their crimes before but were sentenced after the effective date of the FSA. In fact, in Webb's own case, in the 3582 case, Judge Donald wrote a dissent where she pointed out that at the time of Webb's sentencing hearing in January 2011, the prevailing case law in this circuit, established by the United States v. Carradine, held that defendants like Webb should be sentenced in accordance with the mandatory minimums in effect at the time of the offense, irrespective of the FSA's enactment. So, at a minimum, it was perfectly reasonable for the court and for defense counsel to think that the FSA was inapplicable to a defendant like Webb. Going back to what his attorney, in fact, knew at the time of sentencing, so he knew that the guideline range was, I believe, 262 to 327, and he had effectively waived the right to appeal any sentence below 327, because it was within or below the guideline range. He knew the probation office had recommended a within guideline sentence, and that the government was asking for a sentence of at least 262 months, but that at sentencing, he managed to persuade the court to vary significantly downward to 240 months. And so, as far as defense counsel was concerned, he had gotten not only a below guideline sentence, but a sentence that was the lowest possible under the laws, he understood it, and that his client had waived the right to appeal any sentence of that nature. So, as far as what he actually knew, he had no basis to think that a rational defendant would want to appeal that mandatory minimum sentence. In terms of whether he had any reason to believe that his client, in fact, did want to appeal, well, Webb, of course, asserted below that he had directed his attorney to appeal, but the magistrate judge found, as a matter of fact, that that did not happen. There was no request to appeal. And I think it's undisputed that under Webb's own testimony, he spoke to his attorney on January 6th or 7th, which was three to four days after the sentencing hearing. It would have been either the day or the day after the judgment was entered, so the day that the 14-day appeal clock starts to run, and that his client says absolutely nothing about appealing. Not only does he not direct him to appeal, he doesn't say, I wonder if we should take this appeal, or do you see any issues here? And so I think when you consider all those facts together, trial counsel, under the standards set out in Flores-Ortega, had no duty to consult with his client. But even if the court were to assume that there was a violation of the duty to consult, it wouldn't follow that statutory or equitable tolling would apply here. So if you have a situation where the defendant tells his attorney, please file a notice of appeal on my behalf, and the attorney says yes, it makes perfect sense that the time is essentially told until he finds out or has reason to learn that his attorney did not file an appeal. As far as he knows, his conviction is not final, it's up on appeal, there's nothing for him to do, and in fact, it probably makes no sense for him to start preparing his post-conviction motion because his sentencing conviction may still be reversed on appeal. By stark contrast, when you have a defendant who has not been consulted with, he knows that there's no appeal filed. He knows that his conviction is final. He knows that his one-year clock is running. And so there's no logical reason to say, well, the time is told indefinitely until at some later date he essentially finds out that he had a meritorious claim that if his trial counsel had known about, then maybe he should have consulted with him about. It just doesn't follow that the same rationale that supports tolling in a situation of a failure to file violation would apply to a violation of the failure to consult. I'll just briefly maybe address the three bases for tolling that are set out in the Certificate of Appealability. May I interrupt you for a moment, counsel? The briefings suggest that Mr. Webb is distinguishable from some other cases where the prisoner did nothing. So he pipes up and says, I want my file. Within a few months, having never seen his lawyer after, we have reason to think that's the case, he pipes up three or four months and says, or it takes four months to get the file. I don't know quite when he asked for it. I think he asked for the file around June of 2011. But to be honest, I think the file request is a little bit of a red herring. There's a number of references to his need to get the file, although I don't think there's ever been an adequate explanation of what it was in the file that he needed to see or what he discovered from looking at the file. He requested the file because he was concerned that his docket sheet would reflect that he had previously been cooperating with the government and didn't want his fellow inmates to see that. It had nothing to do with determining whether an appeal had been filed, whether he had been consulted with, whether he had meritorious claims. It was just trying to make sure that his fellow inmates wouldn't know that he had cooperated. I think when this court first denied the request for a Certificate of Appealability, its order, I think, got it exactly right. It said, quote, Webb's attorney's failure to consult with him about an appeal in no way impeded the timely filing of a Section 2255 motion. I think that's exactly right and follows from the logic of the cases. So turning to the three grounds for tolling, the first is Section 2255-F2. That one refers to the removal of an impediment created by the government. Here, there's no impediment, certainly not one created by the government. The defendant relies on Waldron v. Jackson, but we would dispute that that case was even rightly decided, but even if so, its logic wouldn't apply here. There, I think the general logic is, if the state appoints a counsel that's constitutionally ineffective, then that ineffectiveness is imputed to the state. Here, Webb didn't have court-appointed counsel. He had retained counsel. On 2255-F4, I think, Chief Judge Cole, you were wondering what fact it was that would be newly discovered. First, I think I would just point the court to which I flagged in my 28-J letter a couple of days ago. He doesn't in any way suggest that he actually needed to discover any new facts to support his claims. His claims, when filed, only raised issues about his career offender status and the validity of the 851 enhancement. He essentially concedes that he did nothing from January 11 to January 2012 when supposedly he found out that no direct appeal had been filed, and at that point he starts acting diligently to prepare his 2255 motion. Really, ultimately, the new facts that counsel is relying on are just developments in Dorsey. As this court said in Phillips, new developments in the law are not new facts for purposes of 2255-F4. If they were, they would totally swallow up 2255-F3. And then finally, equitable tolling. The requirements for that are that the defendant was pursuing his rights diligently and that some extraordinary circumstances stood in his way. Here, as I mentioned, his own affidavit essentially makes clear that between January 2011 and January 2012, he more or less did nothing. So that wouldn't be due diligence. And then second, at worst, we have a garden variety negligence claim and the failure to consult about the appeal, which does not constitute extraordinary circumstances. Unless the court has any additional questions, we would just ask that the decision be affirmed. Okay. Thank you, counsel. Your Honors, there's a question about Mr. Webb's need for the file. He did ask for the file. In the language I quoted, he said that he needed it to work on his case, not just to clean up his docket sheet, but he said to work on his case. How would he clean up the docket sheet? How do you clean up that? You can't do that, can you? I don't know, Your Honor. Apparently people ask to see what's on it. And he later saw a jailhouse lawyer, and that's how he managed to figure out that he had some issues. Before that, before sentencing and the 14-day period after sentencing, he was relying on his counsel, and as he was entitled to do. He isn't charged with memorizing all the facts about his case. He has to get the documents to understand what his claims are. And the question about the amount of time it would take him, it's really an objective type of question. It asks, and this is in Descenzi, when would a duly diligent person in the defendant's circumstance have discovered the fact, the new fact, the fact that my lawyer didn't file the appeal, or the fact that I have an appeal right that no one told me about, or in this case, that I have non-frivolous appealable issues? And that's a, when would a duly diligent person do it? And we can see in these circumstances with Mr. Webb sent off to prison, being through silence told he had no appealable issues, being told that he'd waived his appeal. He's sent off to prison, and he doesn't get his file for four months, and there's this fog and confusion about the Fair Sentencing Act. It's reasonable to give a duly diligent person three months. And, you know, that is the more objective type of question, and the record is established sufficiently to show that a person in his circumstance would have taken three months. Now, there was some limit to the development of the record. Counsel assumes that you're, and the defense counsel, knew all about the Fair Sentencing Act, knew about Carradine, and made some reasonable decisions about that. When I tried to ask if defense counsel, when he's testifying, if he even knew about the Fair Sentencing Act, he wasn't required to answer that question. And all of his testimony about that suggested he didn't. It was only the third federal defendant he had ever represented in 23 years. I think it suggests that he really wasn't thinking about anything. Now, so, and as for the duty to consult, I mean, the main issue really is that there were non-frivolous appealable issues. But, you know, Mr. Webb did reasonably demonstrate an interest in appealing that triggered that duty, and that's separate from the existence of the appealable issues. He did that by always saying he hoped to get less than 20 years, showing disbelief when he got 20 years, and by asking his lawyer to come talk to him. His lawyer testified to all those facts, and that those facts, undisputed, would trigger that duty. Thank you. There are no further questions. Thank you, counsel, for your arguments this morning. The case will be submitted.